| | | |
|---|---|---|
| **CURTIS M. HERMAN and AUSTIN** | : | **3:13cv1118** |
| **JAMES ASSOCIATES, INC.,** | : | |
| **Plaintiffs** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **STEVEN J. HARMAN,** | : | |
| **UNDERGROUND STORAGE TANK** | : | |
| **INDEMNIFICATION BOARD** | : | |
| **MEMBERS: MICHAEL F.** | : | |
| **CONSEDINE; E. CHRISTOPHER** | : | |
| **ABRUZZO; W. MICHAEL SMITH;** | : | |
| **E. BRUCE SHELLER; J. STEPHEN** | : | |
| **HIEBER; LARRY T. MORTON;** | : | |
| **NANCY MARICONDI and STEPHANIE** | : | |
| **C. WISSMAN, KERRY L. YOUNDT** | : | |
| **and ICF INCORPORATED, LLC,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court for disposition are defendants' motions to dismiss plaintiffs' civil rights complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docs. 30, 31). These motions are fully briefed and oral argument was held on October 23, 2013. The motions are thus ripe for disposition.

## Background

The instant civil rights action arose from Plaintiffs Curtis M. Herman and Austin James Associates, Inc.'s (collectively "plaintiffs") termination as a third-party reviewer subcontractor for Pennsylvania's Underground Storage Tank

Indemnification Fund (hereinafter "Tank Fund"). In 1989, Pennsylvania enacted the Storage Tank and Spill Prevention Act (hereinafter "Tank Act"), 35 PA. STAT. ANN. §§ 6021.101 *et seq*. (Doc. 21, Am. Compl. (hereinafter "Am. Compl.") ¶ 4). The Tank Act established a comprehensive regulatory program governing the construction, upgrade and operation of gasoline storage tanks. (Id. ¶ 5).

The Tank Act also created the Tank Fund. The Tank Fund provides liability coverage for damages sustained as a result of a release of regulated substances and requires the prompt cleanup and removal of these substances.[1] (Id.) The Tank Fund is the sole source of payments under the Tank Act, and is funded by fees assessed and collected by the Underground Storage Tank Indemnification Board (hereinafter "Tank Board").[2] (Id. ¶ 9).

Defendants Steven J. Harman (hereinafter "Harman") is the Executive Director of the Tank Fund. (Id. ¶ 11). Harman and the Tank Board handle

---

[1] The Tank Act defines regulated substance as "petroleum, including crude oil or any fraction thereof and hydrocarbons which are liquid at standard conditions of temperature . . . including, but not limited to oil, petroleum, fuel oil, oil sludge, oil refuse, oil mixed with other nonhazardous wastes and crude oils, gasoline and kerosene." 35 PA. STAT. ANN. §§ 6021.103.

[2] The board consists of ten members, including the Insurance Commissioner and the Secretary of the Department of Environmental Protection and eight members appointed by the Governor. (Am. Compl. ¶ 6).

2

claims and make eligibility determinations.  (Id. ¶ 10).

In 1994, Defendants ICF Incorporated (hereinafter "ICF") and Kerry L. Youndt (hereinafter "Youndt") began assisting the Tank Fund.[3]  (Id. ¶ 34).  On March 20, 1997, Pennsylvania's Insurance Commissioner announced that ICF had been re-selected as the third-party administrator for all Tank Fund claims.  (Id.)  ICF and Youndt are the sole third-party administrators for all claims filed against the Tank Fund.  (Id.)  As the third-party administrators, ICF and Youndt are required to investigate the claims and recommend to the Tank Fund whether a claim is eligible for funding.  (Id. ¶ 35).  The Tank Fund also authorized ICF and Youndt to hire firms like plaintiffs' to be third-party reviewer subcontractors to investigate claims and provide other technical services.  (Id. ¶ 36).

**The Musser Release**

In 1997, Leroy and Mary Musser (hereinafter the "Mussers") operated a gas station with underground storage tanks.  (Id. ¶ 39).  In February 1997, the Mussers reported a release of gasoline to the Tank Fund, which determined that the Mussers' 1997 claim was eligible for funding.  (Id. ¶ 40).

In April 1999, the Mussers reported to the Tank Fund three additional

---

[3]  At all times material, Defendant Youndt was the Senior Project Manager for ICF at its Middletown, Pennsylvania office.  (Am. Compl. ¶ 14).

3

fuel releases discovered during removal of underground storage tanks.  (Id. ¶ 41).  The Tank Fund did not investigate the 1999 fuel releases nor determine whether they were timely reported and thus eligible for funding.  (Id. ¶ 42).

In June 2002, the Mussers contacted plaintiffs because their original contractor failed to remediate the site.  (Id. ¶ 44).  The Mussers requested that plaintiffs propose an alternative remedial response.  (Id.)  On September 18, 2003, plaintiffs entered into a fixed price contract with the Mussers to provide remediation for the 1997 fuel release.  (Id. ¶ 46).

On September 29, 2003, the Mussers executed a "General Release and Confidential Settlement Agreement" with the Tank Fund to obtain payment for their 1997 claim.  (Id. ¶ 48).  The agreement released the Tank Fund from all claims for remediation arising out of the Mussers 1997 fuel release.  (Id.)  Plaintiffs were not involved in the 2003 claim release and did not sign it.  (Id.)  Pursuant to the 2003 claim release, the Tank Fund paid $1,208,176.52 to the Mussers, who distributed the money to plaintiffs pursuant to their September 18, 2003 contract.  (Id. ¶ 49).

**Plaintiffs third-party reviewer subcontract**

In addition to providing remediation services, plaintiffs also served as a third-party reviewer subcontractor for the Tank Fund.  (Id. ¶¶ 50-52).  Plaintiffs

4

reviewed and evaluated claims files, provided expert opinion on technical and budgetary questions and developed strategies on major projects.  (Id. ¶ 52). On June 18, 2007, defendants renewed plaintiffs' contract for five years through June 30, 2012.  (Id. ¶ 53).  The 2007 contract also included five optional one-year renewal clauses, which could be exercised at defendants' discretion.  (Id.)

**Mussers' 1999 claim and appeal**

Eight years after the Mussers settled their 1997 claim with the Tank Fund, plaintiffs learned about the Musser's 1999 fuel release.  (Id. ¶ 57). Plaintiffs, on behalf of the Mussers, asked the Tank Fund to indemnify the Mussers for their 1999 fuel release.  (Id. ¶ 59).  Plaintiffs sought reimbursement of over $600,000 in expenses and payment for additional work of $400,000 to fully remediate the Mussers' 1999 fuel release.  (Id. ¶ 61).

On August 3, 2011, the Tank Fund denied plaintiffs' request pertaining to the Mussers' 1999 fuel release because the 1999 fuel release was not a "new" source.  (Id. ¶ 60).  Rather, the Mussers' 1999 fuel release was a continuation of the Mussers' 1997 fuel release, and the 2003 general release prohibited any additional claim arising from the Mussers' 1997 fuel release. (Id.)

Plaintiffs appealed the Tank Fund's initial denial to Defendant Harman, Executive Director of the Tank Fund.  (Id. ¶ 62).  Defendant Harman upheld the Tank Fund's initial decision on October 20, 2011.  (Id. ¶ 65).   As a result, plaintiffs financed the Mussers' administrative appeal to Pennsylvania's Insurance Department, Administrative Hearings Office.  (Id. ¶¶ 66-68, 86). Prior to the administrative hearing, however, the Mussers withdrew their appeal.  (Id. ¶ 71).

**Nonrenewal of plaintiffs' third-party reviewer subcontract**

After the Mussers appealed, between September 2011 and April 2012, Youndt repeatedly advised plaintiffs that the Tank Fund was unhappy with plaintiffs' involvement in the Mussers' appeal.  (Id. ¶¶ 72-73).  Youndt told plaintiffs that their third-party reviewer subcontract was in serious jeopardy because of the appeal on the Mussers' 1999 fuel release.  (Id. ¶ 73).  In mid-February 2012, Youndt stated that he would probably not be able to do anything to save plaintiffs' contract and that this directive came from the Tank Fund.  (Id. ¶ 74).  That same day, plaintiffs met with an individual at the Tank Fund office who advised plaintiffs that there was nothing the Tank Fund could do to save their third-party reviewer subcontract as long as the administrative appeal was ongoing.  (Id.)

On April 9, 2012, at the direction of Defendant Harman, Youndt mailed to plaintiffs a certified letter confirming a phone conversation on that same day, that plaintiffs would not be renewed as a Tank Fund third-party reviewer subcontractor. (Id. ¶ 76). As such, plaintiffs' contract would expire on June 30, 2012 and plaintiffs were directed to return thirty-four (34) assignments by May 31, 2012. (Id.)

In response to the termination of their third-party reviewer subcontract with the Tank Fund, plaintiffs filed a complaint pursuant to 42 U.S.C. § 1983 (hereinafter "section 1983"). Plaintiffs' single-count complaint asserts a First Amendment retaliation claim against all defendants. Specifically, plaintiffs allege that their third-party reviewer subcontract was not renewed in 2012 in retaliation for assisting the Mussers appeal the denial of their 1999 fuel release claim. Defendants filed motions to dismiss plaintiffs' First Amendment retaliation claim on July 25, 2013 and July 26, 2013. (Docs. 30, 31). The parties then briefed the issues bringing the case to its present posture.

**Jurisdiction**

The court has federal question jurisdiction over this civil rights action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution,

laws, or treaties of the United States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting

district courts jurisdiction over civil actions brought to redress deprivations of

constitutional or statutory rights by way of damages or equitable relief).

## Standard of Review

Defendants filed their motion to dismiss the complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6).  The court tests the sufficiency of

the complaint's allegations when considering a Rule 12(b)(6) motion.  All well-

pleaded allegations of the complaint must be viewed as true and in the light

most favorable to the non-movant to determine whether, "'under any

reasonable reading of the pleadings, the plaintiff may be entitled to relief.'"

Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting

Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)).

The plaintiff must describe "'enough facts to raise a reasonable expectation

that discovery will reveal evidence of' [each] necessary element" of the claims

alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d

Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

Moreover, the plaintiff must allege facts that "justify moving the case beyond

the pleadings to the next stage of litigation."  Id. at 234-35.  In evaluating the

sufficiency of a complaint the court may also consider "matters of public

8

record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

## Discussion

Defendants present the court with two issues. First, defendants argue that plaintiffs lack standing to bring this lawsuit. Second, defendants contend that plaintiffs' amended complaint fails to state a claim upon which relief can be granted. Plaintiffs assert that they have standing and allege a viable First Amendment retaliation claim. The court addresses these issues *in seriatim*.

### I. Standing

Initially, defendants challenge plaintiffs' standing to bring this lawsuit. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976). Standing provides "justiciability: whether the plaintiff has made

out a 'case or controversy' between himself and the defendant within the meaning of Art. III."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  The Supreme Court has held that "the standing question in its Art. III aspect  is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'"  Simon, 426 U.S. at 38 (quoting Warth, 422 U.S. at 498-99).

The Court has described three elements that comprise the "irreducible constitutional minimum of standing."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  A plaintiff must first "have suffered an 'injury in fact'–an invasion of a legally protected interest which is (a) concrete and particularized [citations omitted] and (b) 'actual or imminent, not 'conjectural or hypothetical.'"  Id. (quoting Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)). The injury suffered by the plaintiff also must be causally connected to the conduct of which the plaintiff complains:  "the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court.'"  Id. (quoting Simon, 426 U.S. at 41-42).  Finally, "it must be 'likely' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable

decision.'" Id. (quoting id. at 38, 43).

"The party invoking federal jurisdiction bears the burden" of proof to demonstrate standing. Lujan, 504 U.S. at 561. The level of proof required of a party conforms to "the manner and degree of evidence required at the successive stages of the litigation." Id. In the initial stage of the litigation, when the plaintiff need only meet the pleading standards, "general factual allegations of injury resulting from the defendant's conduct may suffice." Id. When the issue in question is summary judgment, though, "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken as true." Id. (quoting FED. R. CIV. P. 56(e)). At trial, "those facts (if controverted) must be 'supported adequately by the evidence adduced at trial.'" Id. (quoting Gladstone Realtors v. Vill. of Bellwood, 441 U.S. 91, 115 n.31 (1979)).

Here, defendants argue that plaintiffs lack standing to bring this suit. Specifically, plaintiffs fail to allege an injury in fact because they were not "participants" under the Tank Act. Additionally, plaintiffs' decision to assist the Mussers with their administrative appeal does not create an injury in fact pursuant to the First Amendment. Therefore, plaintiffs do not have standing

to bring their First Amendment retaliation claim.

The court rejects the defendants' position and finds that plaintiffs have standing to sue regarding their First Amendment retaliation claim. First, plaintiffs have suffered an injury that is both concrete and particular and actual or imminent, which is traceable to the challenged action of Director Harman ordering ICF and Youndt not to renew plaintiffs' contract. Second, plaintiffs allege that their injury–nonrenewal of their contract–was caused by their decision to help the Mussers file an administrative appeal. Finally, redressabiltiy is also apparent: if the court finds that plaintiffs have alleged a First Amendment retaliation claim, plaintiffs will be redressed by a favorable decision in this action.

In their argument, the defendants conflate the technical requirements of standing to be an appellant in an administrative appeal with the status of being a petitioner entitled to protection under the First Amendment of the United States Constitution. The First Amendment seeks to protect those who petition the government for redress of grievances, which the Mussers wanted to do, and which they were able to do by filing an administrative appeal with plaintiffs' assistance. In response to this activity, plaintiffs allege that defendants retaliated against them by failing to renew their third-party

reviewer subcontract.

At this initial stage of litigation when the plaintiffs need only meet the pleading standards, the court finds that plaintiffs have standing to bring their First Amendment retaliation claim against the defendants. See Lujan 504 U.S. at 561. Whether or not plaintiffs could have brought the appeal themselves is irrelevant. They assert that defendants retaliated against them for helping the Mussers file their administrative appeal. See Montone v. Jersey City, 709 F.3d 181, 197-98 (3d Cir. 2013) (finding that a party has standing to bring an action for First Amendment political affiliation retaliation pursuant to section 1983, even where alleged retaliation was directed toward another individual). Therefore, the court will deny defendants' motions to dismiss based upon standing.

## II. First Amendment Retaliation

Plaintiffs bring their First Amendment claim against the defendants pursuant to section 1983. Section 1983 does not, by its own terms, create substantive rights. Rather, it provides remedies for deprivations of rights established elsewhere in the Constitution or federal law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the

> District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, to establish a claim under section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under color of state law. Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998). Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law. Id. The court discusses the issues of state action and alleged deprivation of plaintiffs' constitutional rights in turn.

## A. State action[4]

Defendants Youndt and ICF argue that they cannot be liable under section 1983 because they are not state actors. Plaintiffs argue that they may be liable as state actors due to their relationship with the Tank Fund. Viewing the plaintiffs' allegations as true, the court finds that Youndt and ICF may be liable as state actors.

_____

[4] Defendants Harman and Tank Board do not dispute that they are state actors. Thus, the court focuses its state action analysis on whether Defendants Youndt and IFC are state actors and will refer to them as "Youndt," "ICF" or "defendants."

14

To assert a section 1983 claim, plaintiffs must establish that the defendants acted under color of state law.  See Sameric Corp. of Del., Inc., 142 F.3d at 590.  Conduct under color of state law has been treated the same as establishing "state action" under the Fourteenth Amendment.  Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 929 (1982).  Generally, private actors do not act under color of state law, thus they are not liable under section 1983.  In certain circumstances, however, a private individual may be treated as a state actor if a close nexus exists between the private individual and the state.  See Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005).

The United States Supreme Court has articulated tests to determine whether a private individual may "fairly be said to be a state actor."  Lugar, 457 U.S. at 937-38.  The three general tests are: (1) symbiotic relationship; (2) exclusive function or (3) joint action.  Lugar, 457 U.S. at 967-37 (joint action test); Burton v. Wilmington Parking Auth., 365 U.S. 715, 724-25 (1961) (symbiotic relationship test); Terry v. Adams, 345 U.S. 461, 468-70 (1953) (exclusive function test).  "Under any test, the inquiry is fact-specific."  Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotation marks omitted) (citation omitted).

In the instant case, the first two tests are most relevant.  Plaintiffs assert

that the symbiotic relationship test demonstrates that ICF and Youndt are

state actors.  The United States Supreme Court initially announced this test

in Burton, *supra*, where the Court found that a private restaurant's

discriminatory practices could be treated as state action.  Id. at 724.  In

Crissman v. Dover Downs Entm't, Inc., the Third Circuit Court of Appeals

interpreted Burton as directing the following analysis:

> [W]e conclude that Burton stands for the proposition that, if a
> "symbiotic" relationship does exist, then, by virtue of the close
> involvement of the state and interdependence of the actors in
> the association formed and the challenged activity, the
> conduct complained of is in fact "fairly attributable" to the
> state.  Instead of examining the conduct and, then, the state's
> role in it, Burton would have us look first at the relationship
> and test whether the conduct could be linked to the joint
> beneficial activities-as it was in Burton due to the essential
> revenues flowing from the discriminatory restaurant operation.
> We view Burton, then, not as an exception to the rule that the
> conduct complained of must be fairly attributable to the state,
> but, rather, as providing another vantage point or way of
> assessing the necessary connection to the state.

Crissman v. Dover Downs Entm't Inc., 289 F.3d 231, 240-41 (3d Cir. 2002).

In applying the symbiotic test to the instant facts, the court finds that

plaintiffs provide sufficient allegations of a symbiotic relationship between

Youndt and ICF and the Tank Board and Tank Fund.  Pursuant to the holding

in Burton and the analysis in Crissman, the court first looks to the relationship

between the parties.  In doing so, the court finds numerous facts that describe

16

a relationship between the two or a "joint beneficial activity." Plaintiffs assert that ICF and Youndt are the sole third-party administrator for all claims filed against the Tank Fund. (Am. Compl. ¶ 34). As the third-party administrator, Youndt and ICF are required to investigate the claims and recommend to the Tank Fund whether a claim is eligible for funding. (Id. ¶ 35). The Tank Fund also authorized ICF and Youndt to hire firms like plaintiffs' to be third-party reviewers to investigate claims and provide other technical services. (Id. ¶ 36).

Moreover, plaintiffs assert that ICF and Youndt substituted their decision not to renew plaintiffs' third-party reviewer subcontract, with Defendants Harman and the Tank Board's decision. Specifically, plaintiffs and Youndt had conversations between September 2011 and April 2012. (Id. ¶ 73). Youndt advised plaintiffs that their third-party reviewer subcontract was in jeopardy because of plaintiffs' involvement in the Mussers' appeal. (Id.) On April 9, 2012, at the direction of Defendant Harman, Youndt sent a certified letter to plaintiffs confirming that plaintiffs' third-party reviewer subcontract would not be renewed. (Id. ¶ 76). In short, plaintiffs contend that the decision not to renew their third-party reviewer subcontract was made by defendant Harman and the Tank Board and not by Youndt or ICF. Therefore, plaintiffs

17

state a plausible application of the symbiotic relationship test and Defendants

Youndt and ICF may be liable as state actors.

Second, plaintiffs assert that Youndt and ICF meet the exclusive function

test, which is applicable when a private party exercises "powers traditionally

exclusively reserved to the State." Jackson v. Metro. Edison Co., 419 U.S.

345, 352 (1974) (citations omitted).   The Tank Act empowers the Tank Board

and Tank Fund with the exclusive function of administering claims related to

the Tank Act.  The Tank Act, however, also permits the Tank Board to

delegate its exclusive function to administer claims made against the Tank

Fund.  See 35 PA. STAT. ANN. § 6021.705(a).  Here, the Tank Board has

delegated its power and authority set forth in the Tank Act, including the

administration of claims, to Youndt and ICF.  (Am. Compl. ¶¶ 29, 34-36).

Accordingly, viewing plaintiffs' allegations as true, the court finds that Youndt

and ICF carry out the purposes of the Tank Act and exercise power and

authority belonging exclusively to the Commonwealth.

### B.  Deprivation of plaintiffs' constitutional rights

Defendants next argue that even if they are state actors, plaintiffs have

not alleged a violation of their constitutionally protected rights.  Plaintiffs

assert that defendants failed to renew plaintiffs' third-party reviewer

18

subcontract in retaliation for their involvement with the Mussers' appeal in contravention of their First Amendment rights. After careful review, the court agrees with defendants.

To prove a First Amendment retaliation claim, a plaintiff must prove "(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." Miller v. Mitchell, 598 F. 3d 139, 147 (3d Cir. 2010); (quoting Eichenlaub v. Twp. of Indiana, 385 F. 3d 274, 282 (3d Cir. 2004). The first element is an issue of law; the second and third are questions of fact. Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001); Johnson v. Lincoln Univ., 776 F.2d 443, 454 (3d Cir. 1985). The instant motions to dismiss focus on the first element.

The court's First Amendment analysis "applies differently to private and public employment."[5] Houston v. Twp. of Randolph, 934 F. Supp. 2d 711, 726

---

[5] A First Amendment retaliation claim under the private individual test requires that plaintiffs show: "(1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted).

On the other hand, "A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not

19

(D.N.J. 2013).  The threshold question therefore is whether plaintiffs, as independent third-party reviewer subcontractors for the Tank Fund, were the equivalent of public or private employees.

Plaintiffs' role as a third-party review subcontractor for the Tank Fund demonstrates that they are similar to public employees.  Pennsylvania enacted the Tank Fund to fulfill a vital function of government: identifying and cleaning gasoline leaks within underground storage tanks to ensure the health and safety of Pennsylvania's citizens.  Defendants hired plaintiffs to investigate claims and provide other technical services.  Plaintiffs reviewed the work of consultants hired by owners or operators of  underground storage tanks.  Plaintiffs provided development of strategies concerning the regulatory process and assisted in bidding out work.  Plaintiffs' position as a third-party reviewer subcontractor for this unique legislative enactment establishes that plaintiffs are similar to public employees.

Moreover, plaintiffs are closely related to independent contractors.  The United States Supreme Court has treated independent contractors the same as public employees for the purposes of First Amendment retaliation claims.

have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." Hill v. Borough of Kutztown, 455 F.3d at 241-42 (3d Cir. 2006) (citing Garcetti v. Ceballos, 547 U.S. 410, 419 (2006)).

In <u>Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr</u>, the court stated that:

> Neither the board nor Umbehr have persuaded us that there is a 'difference of constitutional magnitude' between independent contractors and employees in this [First Amendment] context.  Independent government contractors are similar in most relevant respects to government employees, although both the speaker's and the government's interests are typically-though not always-somewhat less strong in the independent contractor case.  We therefore conclude that the same form of balancing analysis should apply to each.

518 U.S. 668, 685-86 (1996) (internal citations omitted); <u>see</u> <u>also</u> <u>O'Hare</u> <u>Truck Serv., Inc. v. City of Northlake</u>, 518 U.S. 712, 720, 726 (1996) (same). The Third Circuit Court of Appeals has also found that the First Amendment's protection of an employee's right to speak on matters of public concern extends to independent contractors.  <u>Springer</u>, 435 F.3d at 275.  Accordingly, the court finds that plaintiffs' position as a third-party reviewer subcontractor is so parallel to that of a public employee that it should be treated as such for First Amendment purposes.  Thus, the court will utilize the public employee First Amendment test.

The law provides that "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006).  The United States Supreme

Court has explained that "public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." <u>Id.</u> at 417.

Here, plaintiffs allege that they engaged in protected speech and petitioning by assisting the Mussers with their appeal. A public employee's speech is protected under the First Amendment's Speech Clause when the speech pertains to "a matter of public concern, and the employee's interest in expression . . . [is] not outweighed by any injury the speech could cause to the interest of the state as an employer in promoting the efficiency of the public services it performs through its employees." <u>Watters v. City of Phila.</u>, 55 F.3d 886, 892 (3d Cir. 1995); <u>see</u> <u>also</u> <u>Borough of Duryea, Pa. v. Guarnieri,</u> 131 S. Ct. 2488, 2494, 2501 (2011) (stating that the First Amendment's Petition Clause protects the rights of public employees to appeal to courts when a public employee's petition relates to a matter of public concern). Public employee speech and petitioning are considered to be on a matter of public concern "if it can be fairly considered as relating to any matter of political, social, or other concern to the community. This determination turns on the content, form and context of the public employee's

speech." <u>Green v. Phila. Hous. Auth.</u>,105 F.3d 882, 886 (3d Cir. 1997)

(internal quotation marks and citations omitted); <u>Borough of Duryea, Pa.,</u> 131

S. Ct. at 2501.

In the instant action, plaintiffs allege that matters pertaining to the

Mussers' appeal such as the reporting of fuel releases and taking corrective

actions with respect to regulated substances involves a matter of public

concern. Specifically, plaintiffs contend the Tank Act was enacted to protect

the public's health and safety from the threat posed by fuel releases. <u>See</u> 35

PA. STAT. ANN § 6021.102(b). The prompt clean up and remediation of fuel

releases, as well as adequate and reasonable compensation for such

releases, is within the purpose of the Tank Act and clearly a matter of public

concern. As a result, the defendants' retaliation against plaintiffs is a matter

of public concern.

Defendants contend that the Mussers' appeal is a private matter. The

Mussers were private owners of underground storage tanks, which provided

them with a right under the Tank Act to appeal the eligibility decision on

funding for remediation. Furthermore, at the time the Mussers filed their

second claim to the Fund, the plaintiffs were remediating the Musser site

pursuant to a private contract between plaintiffs and the Mussers. The sole

reason the Mussers were requesting additional funding was because plaintiffs advised the Mussers that their remediation was going to cost more than their fixed price contract. This fact–going to the fund for more money because the private fixed price contract was inadequate–was entirely a private matter that fails to address a matter of public concern. After careful consideration, the court agrees with the defendants.

The specific context, form and content of the Mussers' appeal does not relate to any matter of political, social, or other concern to the community. First, the Mussers' appeal was a private matter between the Mussers as individual owners of a gasoline station and the Tank Fund. The Mussers' appeal seeks additional financing for the remediation of their site because their private fixed price contract with plaintiffs was inadequate. The appeal does not "seek to inform the public that the [defendants were] not discharging [their] governmental responsibilities . . . nor seek to bring to light actual or potential wrongdoing or breach of public trust." Connick, 461 U.S. at 148. Also, the appeal does not touch on any broad social or policy issue. See Gorum v. Sessoms, 561 F.3d 179, 187 (3d Cir. 2009) (stating that First Amendment activity is not protected when the employee fails to advance a political or social point of view beyond the employment context). Moreover,

the complaints contained within the Mussers' appeal were not made to protect the interests of other Tank Fund participants or beneficiaries. Rather, the content of the Mussers' appeal seeks only to protect plaintiffs' pecuniary interests. In short, plaintiffs' claim is not about the prompt remediation of fuel releases or the public's health and safety. Plaintiffs seek to protect their private pecuniary interests, and it is not "important to the process of self-governance that communications on this topic, in this forum and in this context, take place." Azzaro v. Cnty. of Allegheny, 110 F.3d 968, 977 (3d Cir. 1997). Accordingly, defendants' motions to dismiss plaintiffs' First Amendment claim will be granted.[6]

**Conclusion**

For the reasons stated above, the defendants' motions to dismiss plaintiffs amended complaint will be granted. An appropriate order follows.

**Date: 12/2/13**                     **s/ James M. Munley**
                                       **JUDGE JAMES M. MUNLEY**
                                       **United States District Court**

---

[6] The court will deny this claim with prejudice as an amendment would be futile. See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (holding that district courts must permit a curative amendment within a set period of time unless such an amendment would be inequitable or futile).